**Romolo LECHIC, Plaintiff,**

v.

**COMPANIA PERUANA DE VAPORES, Defendant.**

No. 80 C 835.

United States District Court, E. D. New York.

Oct. 2, 1981.

Irving B. Bushlow, Brooklyn, N. Y., for plaintiff.

Lilly, Sullivan & Purcell, New York City by Thomas E. Stiles, New York City, for defendant.

NEAHER, District Judge.

Plaintiff, a longshoreman employed by Universal Marine Services, Inc. ("Universal"), was injured while unloading sacks of coffee beans from a vessel owned by defendant, allegedly because of the latter's negligence. This action to recover for plaintiff's injuries was removed from State court, and is now before the Court on defendant's motion for a summary judgment dismissing the complaint under § 5(b) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b) ("Act"), which plaintiff has not opposed. For the reasons that follow defendant's motion is granted.

Summary judgment, which cuts off a party's right to a trial, may not be granted unless pleadings, affidavits, depositions or admissions, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), F.R.Civ.P. In determining whether to grant a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), *quoted in S.E.C. v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978). "The very mission of the summary judgment procedure [however] is to pierce the pleadings and to assess the proof in order to see whether there is a genuine

need for trial." Adv.Comm. Note to Proposed Amendments to Rule 56(e), 31 F.R.D. 648 (1962). Hence, a party may not retreat to "the mere allegations or denials of his pleading" in face of "a motion for summary judgment made and supported as provided in . . . [Rule 56]." Rule 56(e), F.R.Civ.P.

■ While summary judgment is not usually granted in a negligence action, where the existence or non-existence of negligence depends upon application of a standard of reasonableness, see *St. Cyr v. Greyhound Lines, Inc.*, 486 F.Supp. 724, 725–26 (E.D.N.Y.1980), summary judgment is not *per se* inappropriate in such actions and "'should be granted in those cases in which there is no genuine issue as to any fact that is crucial to plaintiff's cause of action so that as a matter of law he cannot recover.'" *INA Aviation Corp. v. United States*, 468 F.Supp. 695, 699 (E.D.N.Y.1979), quoting 10 C. Wright and A. Miller, Federal Practice and Procedure: Civil, § 2729 at 561 (1973).

From the complaint and answer, the verified bill of particulars and plaintiff's deposition it appears undisputed that on September 28, 1977 plaintiff, a longshoreman with twenty-five years' experience, fell and injured his back when his foot slipped on loose coffee beans while he was lifting a sack of coffee. When the accident happened the defendant's ship was in its third day of discharging its cargo of coffee, although plaintiff had started work only that morning. Universal was the stevedore hired to perform the unloading.

Plaintiff had unloaded coffee many times before, although at the time he usually worked for another stevedore at a passenger terminal. On deposition plaintiff testified he did not see his hatch boss when he came on board but that he knew what he was supposed to do. When plaintiff commenced work at eight o'clock, coffee sacks still covered the floor of the hold, and seemed in good condition.[1] Plaintiff saw that loose beans covered the sacks, and he had to stand on them to work. Plaintiff testified that with a cargo of coffee, beans typically spilled from small holes made in the sack by the loading hooks the longshoremen used to hoist them into the sling, and that the stevedore hired coopers to sweep up loose beans and sew torn sacks. On the day of the accident, however, plaintiff did not see any coopers in the hold. Plaintiff did not complain to anyone about the loose beans. Plaintiff also testified he did not see any of the ship's employees near the work area. He does assert, however, that defendant had actual as well as constructive notice of the allegedly unsafe condition in the hold.

Prior to the 1972 amendments to the Act, a longshoreman injured while unloading a ship could recover against the shipowner by proving the ship was unseaworthy due to an unsafe, injury-causing condition, *e. g., Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). Recovery was allowed even if the stevedore or its employees caused the unsafe condition; in such a case, however, the shipowner could recover against the stevedore for breach of an implied warranty to work safely. *Ryan Stevedoring Co. v. Pan Atlantic S.S. Co.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). See generally *Scindia Steam Navigation Co. Ltd. v. De Los Santos*, —— U.S. ——, 101 S.Ct. 1614, 1620, 68 L.Ed.2d 1 (1981). Pursuant to the amendment to § 905(b),[2] however, the shipowner no longer

---

1. Plaintiff's deposition testimony in this respect was inconsistent with his complaint and bill of particulars which asserted that the sacks were rotten.

2. Section 905(b) provides in part:
"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel .... The liability of the vessel under this subsection shall not be based upon

could be held liable for every unsafe condition, but only for its own negligence.

The contours of the negligence standard imposed on shipowners by § 905(b) were reviewed recently by the Second Circuit in *Evans v. Transportacion Maritime Mexicana*, 639 F.2d 848 (2d Cir. 1981), and by the Supreme Court in *Scindia Steam, supra*. These decisions make clear that in the circumstances of this case defendant is entitled to a summary judgment dismissing the complaint.

In *Scindia Steam*, the Court ruled that it was inconsistent with the 1972 amendments to hold, as the court below had done, that the shipowner had a duty to discover and correct dangerous conditions that developed during the stevedore's operations. 101 S.Ct. at 1622–24. That is,

> "absent contract provision, positive law or custom to the contrary, ... the shipowner has no general duty by way of supervision or inspection to exercise reasonable care to discover dangerous conditions that develop within the confines of cargo operations that are assigned to the stevedore. The necessary consequence is that the shipowner is not liable to the longshoremen for injuries caused by dangers unknown to the owner and about which he had no duty to inform himself.... The shipowner, within limits *is* entitled to rely on the stevedore, and owes no duty to inspect or supervise the cargo operations." *Id.*, 101 S.Ct. at 1624 (emphasis in original).

The Second Circuit had previously reached the same conclusion, see *e. g., Lubrano v. Royal Netherlands S.S. Co.*, 622 F.2d 29, 31–32 (2d Cir. 1980) (citing cases), which it reaffirmed in *Evans, supra*, 639 F.2d at 855–56.

Contrary to defendant's assertion (Deft's Memo at 9–10), plaintiff does claim that the ship was given notice of the condition prior to the accident, see Bill of Particulars, Items 4, 5, attached to Petition for Removal. In both *Scindia Steam* and *Evans, supra*, the courts recognized that in some circumstances the shipowner's notice of a dangerous condition arising in the course of a stevedore's operations might render it liable to longshoremen injured as a result. Defendant's moving papers have not eliminated the possibility that the ship had notice of the condition, which precludes a grant of summary judgment on this ground. See *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment is nevertheless appropriate since the present record demonstrates the absence of circumstances under which a duty to intervene might be imposed on the shipowner.

The decision in *Scindia Steam* regarding liability when the shipowner knows of the defect does not help plaintiff much, for the Court there merely acknowledged, in only a partial endorsement of the Second Circuit's broader view in *Evans*, "that there are circumstances in which the shipowner has a *duty to act where the danger to longshoremen arises from the malfunctioning of the ship's gear being used in the cargo operations.*" *Scindia Steam, supra*, 101 S.Ct. at 1626 (emphasis added). Plaintiff does not contend that the dangerous condition—loose coffee beans—arose from any malfunctioning of the ship's equipment used by Universal, such as the ship's winch in *Scindia Steam*. There is no factual dispute that the coffee beans in the hold spilled from the holes in the sacks made by the longshoremen's loading hooks. Moreover, plaintiff has offered no evidence of any "contract provision, positive law or custom" which would alter the general rule that the shipowner is not liable for hazards arising in the course of the stevedore's operations. Indeed, the only record evidence concerning custom indicates that the responsibility to clean up loose coffee beans by hiring coopers was the stevedore's, not the shipowner's.

■ Nor does the Court of Appeals' decision in *Evans* require a trial in this case. True, defendant has not foreclosed the possibility that the ship had notice of the dangerous condition. But

the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

"[m]ere knowledge of a dangerous condition ... will not serve as an independent basis for liability. See *Giglio v. Farrell Lines, Inc.,* [613 F.2d 429, 432 (2d Cir. 1980)] .... Rather, the '*sine qua non* of a ship's liability for an obviously dangerous condition is reasonable anticipation that the longshoremen will not be able to avoid it.' *Giglio v. Farrell Lines, Inc., supra,* 613 F.2d at 432–33." *Evans, supra,* 639 F.2d at 856.

With one exception, the present record reveals no circumstance, and plaintiff has suggested none, that creates any issue whether it was reasonable for the ship to assume the stevedore would correct the problem. Plaintiff does not contend that the ship "affirmatively join[ed] in the decision to continue [unloading] despite the hazard," or that "the dangerous condition [was] too difficult for the stevedore alone to remedy," see *id.* Indeed, plaintiff's own deposition establishes that industry custom placed the burden of acting on the stevedore, not on the shipowner.

In such circumstances no triable issue of fact is demonstrated that would overcome the shipowner's reasonable expectation that the stevedore would perform its job in a safe and workmanlike fashion. Accordingly, summary judgment is granted in defendant's favor dismissing the complaint.

SO ORDERED.